UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 01-10974

---

PIEDAD GONZALES,

      Plaintiff

VERSUS

BRIAN C. ENGLAND, Garland Police Officer, Badge No. 267,

      Defendant - Appellee

VERSUS

DOUGLAS R. LARSON,

      Movant - Appellant

VERSUS

CITY OF GARLAND, TEXAS,

      Movant - Appellee

---

Appeal from the United States District Court
for the Northern District of Texas
No. 3:96-CV-2673

---

July 15, 2002

Before KING, Chief Judge, PARKER and CLEMENT, Circuit Judges.

1

PER CURIAM:[*]

Movant-appellant Douglas C. Larson ("Larson"), the attorney for the plaintiff in the underlying lawsuit, appeals from a sanctions order issued against him by the magistrate judge and affirmed by the district court. The magistrate judge sanctioned Larson because she determined that Larson acted in bad faith in subpoenaing one of the defendant's attorneys to testify in the underlying lawsuit. Finding that the issuance of the sanctions order was an abuse of discretion, we REVERSE.

I.   INTRODUCTION

The sanctions issue springs from the actions taken by Larson in representing his client, Piedad Gonzales, during the course of the underlying lawsuit. Thus, we briefly summarize the facts of the underlying case.

Piedad Gonzales sued Defendant-Appellee Brian C. England ("England"), a Garland City Police Officer, for civil rights violations arising from the stop of her vehicle and subsequent arrest. She claimed that England improperly stopped her vehicle based on a computer report from an undetermined and unverified source that the vehicle she was driving had been stolen.

During pre-trial proceedings, Larson, on behalf of his client, filed a motion for sanctions in the district court against England

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

and England's attorney, Ronald Jones. Larson claimed that Jones was not producing all of the fields of relevant information available through the police department's computer records and was thus engaged in a "cover-up" of England's actions. The district court denied the motion.

On September 30, 1998, James Jordan entered an appearance as lead attorney for England. Ronald Jones, the previous lead counsel, subsequently played a less significant role in representing England.[1] On October 20, 1998, Larson designated Jones as a potential trial witness pursuant to Fed. R. Civ. P. 26. The disclosure filed with the district court stated that "Mr. Jones, as a Garland City Attorney and as England's lawyer, covered up evidence that England's computer did not show that there was a basis to arrest or stop the plaintiff." England also designated Jones as a potential witness based on his knowledge about the disposition of the traffic ticket that Gonzalez was issued on the

---

[1] The parties contest whether Ronald Jones remained on the case as an attorney after James Jordan entered the case as lead counsel. The record shows that Jones did not appear as counsel of record on the pleadings after Jordan entered the case in September 1998. However, there is other evidence in the record to suggest that Jones remained on as co-counsel to England throughout the rest of the case. Indeed, Larson's questioning of Jones at trial indicates that Larson still considered Jones to be one of England's lawyers at the time he issued the subpoena. In any event, the magistrate judge clearly found that Jones was one of England's attorneys at the time Larson subpoenaed Jones to testify and that Larson knew Jones was still an attorney in the case. There is ample evidence to support this finding and thus our decision in this case operates on the presumption that Larson subpoenaed one of his opposing lawyers to testify at trial.

3

day of the arrest.

The trial was set for June 5, 2000. On May 25, 2000, Larson issued the trial subpoena for Jones to obtain Jones' trial testimony. The subpoena was served on Saturday, June 3, 2000. On the day of trial, England moved to quash the Jones trial subpoena and also moved for sanctions. However, the district court ruled that Jones could testify and Jones did testify during the trial.

After the jury returned its verdict in favor of the defendant and final judgment was entered, Gonzales responded to the motion to quash and for sanctions, arguing that it should be denied. England then moved to withdraw the motion without prejudice. The district court granted the motion.

England and the City of Garland subsequently refiled the motion for sanctions. The district court referred the matter to the magistrate judge pursuant to 28 U.S.C. § 636(b). After holding a hearing, the magistrate ruled that Larson's conduct in subpoenaing Jones to testify was made in bad faith. The magistrate sanctioned Larson by ordering him to pay $15,000 in attorneys fees and costs to England and the City of Garland. Larson filed objections to the magistrate's findings with the district court. The district court affirmed the magistrate judge's sanctions order under a "clearly erroneous" standard of review and ordered Larson to pay the movants an additional $7,920 in attorneys fees. Larson appeals from this ruling.

4

## II.  STANDARD OF REVIEW

The magistrate judge issued its sanctions order pursuant to a court's inherent authority to punish conduct which abuses the judicial process.  *Chambers v. NASCO*, Inc., 501 U.S. 532, 543-45 (1991).  We review such an imposition of sanctions for abuse of discretion.  *Natural Gas Pipeline v. Energy Gathering, Inc.*, 2 F.3d 1397, 1411 (5th Cir. 1993).

## III. DISCUSSION

After considering the arguments of each party and the record evidence, we find that the magistrate abused her discretion in determining that Larson's conduct was taken in bad faith.  We do so for several reasons.

First, our primary concern in this case is to make sure the district court was not ambushed at the last minute by Larson's request to call Jones as a witness.  Our review of the record indicates that the district court was not blind-sided by this request.  Larson notified the district court early in the pre-trial proceedings in a response to England's summary judgment motion that he believed Jones was not providing him with important documents relevant to plaintiff's case.  He specifically listed Jones as a trial witness and explained that Jones would be called to testify concerning the alleged cover-up.  More importantly, the record shows that Larson specifically informed the district court at the pre-trial conference that he intended to call Jones to the stand to

5

question him about the alleged missing computer-generated information. Larson subsequently stuck to that line of questioning during the trial.

Jones' trial testimony demonstrates that Larson did not make much headway in trying to prove that Jones was involved in a coverup. However, Larson's questioning of Jones did raise a plausible point concerning whether all computer information related to the incident which was available from Mesquite was turned over to the plaintiff. The fact that Larson was not ultimately successful in his questioning of Jones does not mean that Larson acted in bad faith in questioning a witness concerning an issue that was relevant to the plaintiff's case.

The district court had all the necessary information before it at the time of trial to determine whether Jones should be allowed to testify. The district court decided that Jones could testify. Thus, the sanctions issue should have become moot at that point in time. We fail to see why the sanctions issue was referred to the magistrate for a ruling after the district court - knowing all the relevant circumstances surrounding the issuance of the trial subpoena - had already determined that Jones could properly testify.[2]

---

[2] Larson also raises the issue of whether the magistrate had the authority under 28 U.S.C. § 636 to issue the sanctions order or was limited to filing a report and recommendation so the district court could conduct a *de novo* review. While we agree that very serious questions exist as to whether the magistrate had the

Second, as previously mentioned, it is undisputed that Jones was designated by both parties as a trial witness. England argues that Larson's issuance of the subpoena to Jones on the eve of trial hampered England's ability to prepare for trial. This argument misses the point. Of course, the subpoena required England's counsel to do extra work, but England cannot claim to be unfairly surprised by the subpoena of a witness which both sides had designated as a trial witness.

England strains its own credibility in arguing that Larson should be sanctioned for subpoenaing a witness that England himself had listed on his witness list. Because England had designated Jones as a trial witness, England could have properly called Jones to the stand during his own case in chief without unfairly surprising the plaintiff. To paraphrase, what is fair for the goose is also fair for the gander.

England also claims that his ability to conduct his trial defense was harmed because Jones was not able to stay in the courtroom on the first day of the trial after the invocation of "The Rule." This argument is also a red herring.

It is true that Jones was unable to stay in the courtroom during the first day of trial due to the invocation of "The Rule" and thus Jones was impeded in his ability to assist Jordan in

---

authority to enter the sanctions order, we need not resolve this matter because of our determination that Larson's conduct does not constitute "bad faith" as a matter of law.

7

trying the case. However, if Jones was truly needed in the courtroom to aid in the defense, it stands to reason that lead counsel Jordan would have asked for an exception to "The Rule" so that Jones could stay in the courtroom. It is telling that he never made this request to the district court. Thus, England's contention that Jones' exclusion from the courtroom prejudiced his case falls flat. Any alleged problems which arose from Jones being removed from the courtroom due to the invocation of "The Rule" should have been taken up with the district court at the time of trial.

We also cannot accept the magistrate judge's justification for discounting the fact that Larson had listed Jones as a witness in the pre-trial disclosures. According to the magistrate judge, it is a common practice for attorneys to designate their opposing counsel as witnesses out of an abundance of caution even though the attorneys do not truly intend to call their opposing counsel to the stand. Thus, the magistrate reasoned that Larson's designation of Jones as a witness in pre-trial disclosures should not have alerted England to the fact that Larson intended to call Jones as a witness. In our view, the magistrate's observation and rationale are simply incorrect. Larson's designation of Jones as a witness on the pre-trial disclosures put England on notice that Jones was "fair game" and could be properly called as a witness.

Finally, we note that Larson's unrefuted testimony is that he

consulted outside counsel as to the propriety of calling Jones as a witness. The outside counsel advised Larson that it would be appropriate to subpoena Jones for trial. This fact cuts against any finding that Larson engaged in "bad faith" conduct.

**IV. CONCLUSION**

For these reasons, the district court order affirming the magistrate's sanctions order and ordering Larson to pay a total monetary sanction in the amount of $22,920 is hereby REVERSED.